## VOGT v. STATE BANK OF WISCONSIN OF MADISON, WIS., et al.

### No. 5527.

Circuit Court of Appeals, Seventh Circuit.

Feb. 12, 1936.

Louis H. Joss, William G. Parker, and James O. Caulfield, all of Minneapolis, Minn., and O. A. Stolen, of Madison, Wis., for appellant.

Harold M. Wilkie and William H. Spohn, both of Madison, Wis., for appellees.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Plaintiff (appellant here) sued defendants-(appellees here) in the District Court for damages for wrongful conversion of a certain promissory note and mortgage. Defendant bank is the successor of certain other Wisconsin banks that were in existence at the time of some of the transactions complained of, but in view of the conceded liability of the defendant bank for the acts of its predecessors, they will all, for the sake of clarity, be referred to as defendant. At the conclusion of plaintiff's case the trial court directed a verdict for defendant, upon which judgment was rendered. It is this action of the court, together with rulings leading thereto, of which plaintiff complains.

It appears from the undisputed facts that on February 17, 1928, defendant loaned one Rupert Batz who was a vice president of the Farmers & Merchants Bank of Sun Prairie, Wis. (not a party to this proceeding and hereinafter referred to as Sun Prairie Bank), the sum of $15,000, and Batz pledged as collateral to said loan the note and mortgage which are the subject-matter of this suit. This note, so pledged as collateral, was a note given by the Cities Housing Corporation on November 27, 1926, in the sum of $22,000, payable to the order of Ganley Brothers Company, and secured by a second mortgage on certain real estate in the city of St. Paul, Minn. This note and mortgage had been duly indorsed and assigned by the payee to one Milo J. Evans of the county of Shawnee, state of Kansas, and by him later to the Sun Prairie Bank and one R. O. Gmeinder as joint assignees. Later, and on August 13, 1927, the same had been assigned by such joint assignees to one Milton P. Firestone, and on February 14, 1928, by Milton P. Firestone to Rupert J. Batz. The assignments of the mortgage

to Firestone and by Firestone to Batz were filed for record in the office of the registrar of titles in St. Paul at about the same time on February 14, 1928. As heretofore indicated, Batz assigned the mortgage to defendant on February 17, 1928, and the same was filed for record on February 20, 1928. The real estate covered by the mortgage had been registered under the Torrens Act of Minnesota (Mason's Minn.St.1927, § 8247 et seq.), and all of the assignments referred to were duly recorded under the provisions of the Minnesota law.

The proceeds of the $15,000 loan to Batz were, at the direction of Batz, placed to the credit of the Sun Prairie Bank, it being a correspondent of the defendant, and on the same date Batz' account with the Sun Prairie Bank was credited with $15,000. Subsequently, and within a few days, Batz checked out practically the entire sum. The balance due on the Cities Housing Corporation note at the time it came into the hands of defendant was $20,714.53, and certain collections were afterwards made by defendant upon this collateral note and applied to the credit of the Batz note. On July 15, 1931, the Batz note had, by reason of these collections, on the collateral note been reduced to $9,-181.79 and on that date defendant sold the collateral note for $9,281.79 to satisfy such remaining balance and costs. At the time of the transfer of the collateral note to defendant it was complete and regular upon its face and unmatured.

It does not appear from the evidence by just what chain of title plaintiff claims ownership of the note in question, by reason of the sustaining of objections to such proof by the trial court, but it sufficiently appears that one E. C. Vogt, plaintiff's husband, claimed to have acquired ownership of the note through certain transactions had by him with officers of the Sun Prairie Bank after the note had come to their hands and prior to its transfer to the defendant. Batz, Gmeinder, and Firestone were officers of the Sun Prairie Bank, and Vogt was a customer of such bank, and Vogt claims that by reason of some wrongful conduct on their part, Batz was permitted to pledge the note in question with defendant when in truth he, and not Batz, was the rightful owner of the note. Vogt's alleged interest or right in the note and mortgage nowhere appears of record and his name does not appear upon the note as an endorsee or other-wise, and no actual notice was given to defendant of Vogt's alleged rights in the note until after assignment to defendant. Under the above facts Vogt claims a wrongful conversion of the note and mortgage by the defendant and plaintiff claims to be the assignee of such cause of action.

The pertinent portions of the Wisconsin Statutes are sections 116.30, 116.32, 116.57, 116.60, 116.61, and 116.64 of the Negotiable Instruments Act.

It was conceded by plaintiff on the trial that the note was complete and regular upon its face, that defendant acquired same before maturity and for value, and that no actual notice of plaintiff's claim was given defendant until after it had accepted the note as collateral. To further recite the circumstances relied upon by plaintiff to show constructive notice to defendant of defect in the title of Batz, or to bring home to defendant knowledge of such facts as would charge defendant with bad faith in taking the instrument, would unduly lengthen this opinion without any useful purpose. It is sufficient to say that we have carefully examined the record and find it devoid of any competent proof of this element of plaintiff's case. Plaintiff undertook at the trial to go into the controverted question of plaintiff's title to the note in question but before opening up what gave promise of being an extended hearing on this question the court directed plaintiff to first offer all her proof of notice to defendant. The trial court's attitude is best illustrated in the following colloquy between the court and counsel for plaintiff:

"Mr. Joss (for Plaintiff): Do I understand from the court's ruling that we have not proved to the court's satisfaction that there are circumstances which would put that bank on notice?

"The Court: So far I am satisfied you have not proved any fact or incident or circumstance that shows any actual notice or shows any bad faith which would really be dishonest on the part of the bank receiving it. * * *

"The Court: Well, we are concerned here with a transaction which, briefly stated, is that Batz negotiated with the Madison Bank his note for $15,000, secured by a note for $22,000 of the Cities Housing Corporation, which Mr. Batz delivered to the bank, with an assignment of a second mortgage on the St. Paul property. The evidence, either in the record now or

which the court is advised will be offered, is that on that day the credit of $15,000 was credited to the Farmers and Merchants Bank of Sun Prairie. So far the record is silent as to any actual notice the bank had of any fraud or any defect in the title of the paper negotiated, and so far as the record is now there is nothing in the record, there is no evidence in the record of any bad faith on the part of the Madison bank in its transaction, and until there is some evidence in this record establishing some instance or some fact which establishes bad faith, either actual knowledge or bad faith on the part of the plaintiff (defendant), I do not see where we are concerned with all these collateral issues at all. That is the first step. * * *

"The Court: I will agree with you the question of bad faith or actual notice is a question for the jury, but until there is some evidence in the record, some relevant or material or competent evidence in the record that tends to establish either actual notice or bad faith, there is nothing to go to the jury. What have you got in the record now, do you contend, or that you expect to submit or prove, that will establish either bad faith or actual knowledge? Now, I think, Mr. Joss, that this case is going to turn upon that point. I think that is all there is to this case now, as I can see it. Unless that is established I do not see that the plaintiff can recover.

"Mr. Joss: Your Honor, I wish also to call your attention to this fact; that invariably in these cases where the question of bona fides arises, it is always by circumstantial evidence.

"The Court: I agree with you.

"Mr. Joss: It never can be anything else.

"The Court: I agree with you. * * *

"The Court: * * * Now, why don't you confine yourself now to putting in what proof you have of actual knowledge or bad faith of the bank?

"Mr. Joss: I have shown all the proof of that that I can put in except the question of demand, and the ruling of the court has prevented me today from showing the ownership of that note at any time. * * *

"Mr. Joss: There is absolutely no use of our offering any evidence as to notice or anything else if the court's ruling is going to be that we cannot prove the fact we paid a consideration for the note and how we paid it.

"The Court: If you establish the bank had actual notice, or acted in bad faith, then all the evidence I have rejected is admissible. Until that I do not think it is admissible. I do not think there is anything in the record to show any bad faith on the part of the bank, or to show that it had notice. * * *

"The Court: Well, go ahead with your proof.

"Mr. Joss: But I first have to prove the ownership of this note by Mr. Vogt, and you have foreclosed me from that.

"The Court: I do not think we have.

"Mr. Joss: Well, I have offered this testimony.

"The Court: I have tried to make it plain that you have got to prove the bank had actual knowledge or acted in bad faith. If you are going to put Mr. Vogt on the stand to prove the bank had notice, why don't you do so, or whatever you have? I don't know what your evidence is.

"Mr. Joss: But, Judge, what is the good of giving notice when I can't prove ownership, and I have attempted to prove ownership.

"The Court: The court has some discretion as to how proof should be admitted. If the court is satisfied that the very keystone of this case has not been proven, what is the use of going into a lot of collateral issues? I think you should establish that proof; if you have that proof and it is competent, then you can go into these other issues. I have tried to make myself clear on it.

"Mr. Joss: Well, it is possible there may be a misunderstanding between the court and myself as to the order of proof. I see the court's attitude, that the court is controlling the order of proof.

"The Court: That is what it amounts to."

At this point in the discussion adjournment was had and the following morning, upon convening of court, the following further colloquy was had:

"Mr. Stolen (for Plaintiff): May it please the Court, our understanding is that the Court will sustain objection to any testimony on the matter of notice, and that you hold as a matter of law that the facts and circumstances that prove notice are not even sufficient to go to the jury; and

while we have other testimony on the question of ownership and the transfer of the note and mortgage to Mrs. Vogt from Mr. Vogt, and as to the value of it, we have no other testimony on the question of notice and bad faith on the part of the bank, and we want to move at this time to strike from the record the testimony of Mr. Harris and Mr. Firestone.

"Mr. Wilkie (for Defendant): You are making a motion to strike?

"Mr. Stolen: I am making a motion to strike from the record the testimony offered of Mr. Harris and Mr. Firestone, just to shorten the record, and with that we intend to rest.

"The Court: The motion to strike from the record the testimony of the witness Harris and Firestone will be granted.

"Mr. Stolen: Then, with the understanding that any other testimony would be ruled out because of failure of notice, we rest at this time."

Plaintiff, by her seventh and eighth assignments of error, contends that the court prevented her from proving that the title of the Sun Prairie Bank to the note was defective under the provisions of section 116.60, Wisconsin Statutes, and that had plaintiff been permitted to prove such defective title on the part of defendant's assignor the burden of proving that defendant acquired the note in due course would have shifted to the defendant under the provisions of section 116.64. While it is true that upon proof of a defective title in defendant's assignor, defendant would under the statute be charged with the burden of showing that it was a holder in due course, yet the difficulty with plaintiff's position is that she has relieved the defendant of this burden by her own evidence and admissions. The proof offered by plaintiff affirmatively shows the defendant to be a holder in due course and one who acquired the instrument in the usual course of business, and under those circumstances the trial court was entirely justified, on an assumption of defective title, in so treating the defendant. It is folly to say the burden shifts when plaintiff has already assumed and fully met the burden. Plaintiff avers that it was error for the court to decline to permit her to offer her proof of defective title until she had first offered proof that defendant had notice or was acting in bad faith. The order of proof lay within the discretion of the court

and we think it good judgment under the circumstances of this case for the court to have required that plaintiff first produce her evidence by which the defendant might be made to suffer the consequences of a defective title before entering upon the controverted question of plaintiff's title or the defective title of Batz. No contention was made that that evidence in any way bore upon the question of notice to defendant or defendant's lack of good faith, and it was in the interest of a speedy determination of the case to adopt the course that was adopted by the trial court. The court was very patient in making its position clear to plaintiff and in according plaintiff every opportunity to offer proof upon the question of notice and bad faith. In response, plaintiff assured the court she had no further proof on this question.

It appears that the Sun Prairie Bank carried an account with defendant, and plaintiff asserts that it was the duty of defendant, when the plaintiff's claim to the note subsequently became known to defendant, to charge the account of the Sun Prairie Bank with the amount so advanced by defendant to Batz. We think this position untenable for, while it is true that the amount advanced by defendant was credited to the account of the Sun Prairie Bank at the request of Batz it is also true that the entire amount was immediately passed by the Sun Prairie Bank to the credit of Batz. It seems plain that the Sun Prairie Bank was merely an instrumentality chosen by Batz for the passing of the fund from defendant to him and under such circumstances defendant would have had no right to charge the account of the Sun Prairie Bank with the amount so loaned by it to Batz.

The other assignments of error all center in the main question of whether there was any substantial evidence to submit to the jury on the question of whether defendant had notice of any infirmities in the title to the instrument or knowledge of facts that would constitute bad faith upon its part in accepting the same. Plaintiff avers that the question of bad faith is a fact question for the jury and that the court erred in directing a verdict. This would be true had plaintiff submitted proof of any facts or circumstances from which a jury might reasonably have drawn the conclusion of bad faith, but, under the state of the record before us, we think the trial court clear-

ly right in concluding that plaintiff had failed in this respect.

The defendants by their motion to dismiss the appeal have also raised a procedural question, but we have preferred to dispose of the case on its merits.

The judgment is affirmed.